FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 26, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ARNOLD ERNEST DESONIA, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:16-CV-5097-SMJ <br><br> **ORDER GRANTING PLAINTIFF'S SUMMARY JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION** |

## I. INTRODUCTION

Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 12 & 17. Plaintiff Arnold Ernest Desonia appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 1. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.

After reviewing the record and relevant authority, the Court is fully informed. As discussed below, the ALJ erred by finding that Mr. Desonia did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404. Because Mr. Desonia's

ORDER **-** 1

heart condition met Listing 4.04, he is conclusively presumed to be disabled. Accordingly, the Court reverses the ALJ's decision and remands for an immediate award of benefits.

## II. Statement of Facts[1]

Mr. Desonia was born July 16, 1951. AR 138. He has a GED and some auto-body repair training. AR 42–43. He served in the U.S. Army for three years and received medical care through the Veteran's Administration (VA). AR 42. Mr. Desonia has not engaged in substantial gainful activity since 2007.[2] AR 148. His work experience prior to that time included insurance sales and computer call-in assistant. *Id.*

Mr. Desonia filed an application for Social Security disability benefits in May 2013, alleging an onset date of July 1, 2011. AR 18. He subsequently amended the alleged onset date to December 1, 2011. AR 18, 39. His application was denied initially and on reconsideration. AR 33–70. The ALJ denied Mr. Desonia's application following a hearing. AR 18–28. The Appeals Council denied his request for review. AR 1–4.

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

[2] Mr. Desonia continued to do some work hauling disabled vehicles after this period, but the ALJ found that he had not engaged in substantial gainful activity during the relevant period. AR 20.

## III. Disability Determination

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the

claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## V.     Standard of Review

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

## VI.     ANALYSIS

The ALJ found at step one that Mr. Desonia did not engage in substantial gainful activity during the relevant period. AR 20. At step two, the ALJ found that Mr. Desonia had two severe impairments: coronary artery disease and hypertension. AR 20–21. The ALJ found that Mr. Desonia's other conditions, including

depression, were not severe. AR 20–24. At step three, the ALJ concluded that Mr. Desonia's impairments did not meet or medically equal any listed impairment. AR 24. At step four, the ALJ concluded that Mr. Desonia retained the residual functional capacity to perform sedentary work and that he could perform past work as a Customer Call-in Service person. AR 21. Because the ALJ concluded that Mr. Desonia could perform past relevant work, he did not move on to step five.

Mr. Desonia challenges the ALJ's decision at steps two, three, and four. Mr. Desonia argues that at step two the ALJ should have also found that his depression was a severe impairment. ECF No. 12 at 10, 13. Mr. Desonia argues that the ALJ erred at step three by finding that his heart condition did not meet or equal a listed impairment. ECF No. 12 at 11 Mr. Desonia argues that the ALJ's step-four determination that he could perform his past work is not supported by substantial evidence because it fails to reflect all of Mr. Desonia's limitations. ECF No. 12 at 12. Mr. Desonia also argues that ALJ improperly found his symptom testimony not credible. ECF No. 12 at 13.

Because the ALJ incorrectly found at step three that Mr. Desonia's heart condition did not meet Listing 4.04, it is clear from the record that Mr. Desonia is entitled to benefits and it is unnecessary to address his other arguments. The ALJ addressed step three only very briefly, concluding:

> The claimant's heart condition did not meet or equal the requirements of listing 4.04. For instance, he did not have an ischemic episode

requiring revascularization within a 12-month period. He was able to undergo a stress test. He was able to perform activities of daily living, such as living independently, interacting with others, caring for himself, working at his own business, and so forth.

AR 24.

Listing 4.04 provides three alternate ways that a claimant can demonstrate listing-level ischemic heart disease:

> *Ischemic heart disease*, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:
>
> A. Sign-or symptom-limited exercise tolerance test demonstrating at least one of the following manifestations at a workload equivalent to 5 METs or less:
>
> 1. Horizontal or downsloping depression, in the absence of digitalis glycoside treatment or hypokalemia, of the ST segment of at least −0.10 millivolts (−1.0 mm) in at least 3 consecutive complexes that are on a level baseline in any lead other than a VR, and depression of at least −0.10 millivolts lasting for at least 1 minute of recovery; or
>
> 2. At least 0.1 millivolt (1 mm) ST elevation above resting baseline in non-infarct leads during both exercise and 1 or more minutes of recovery; or
>
> 3. Decrease of 10 mm Hg or more in systolic pressure below the baseline blood pressure or the preceding systolic pressure measured during exercise (see 4.00E9e) due to left ventricular dysfunction, despite an increase in workload; or
>
> 4. Documented ischemia at an exercise level equivalent to 5 METs or less on appropriate medically acceptable imaging, such as radionuclide perfusion scans or stress echocardiography.
>
> OR

ORDER - 7

B. Three separate ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive 12-month period (see 4.00A3e).

OR

C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

    1. Angiographic evidence showing:

        a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or

        b. 70 percent or more narrowing of another nonbypassed coronary artery; or

        c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or

        d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or

        e. 70 percent or more narrowing of a bypass graft vessel; and

    2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

The ALJ appeared to find that Mr. Desonia's condition did not meet or equal Listing 4.04 under paragraph B. or C. because Mr. Desonia "did not have an

ischemic episode requiring revascularization within a 12-month period" and he was "he was able to undergo a stress test," AR 24. However, the ALJ did not consider whether the results of Mr. Desonia's stress test demonstrated that his condition met Listing 4.04 under paragraph A. The results of the stress test conducted by Dr. Robert Fleming in April 2013 unambiguously meet Listing 4.04 under paragraph A.1. AR 277–303. As Dr. Fleming concluded, the test showed "1.5 mm downsloping ST depression on lead V5 and V6 that happened at 2 minutes into exercise and recovered 3 minutes into recovery." AR 303. Subsequent catheterization conducted by Dr. D. Elizabeth Le confirmed several severe blockages requiring coronary bypass surgery, including that Mr. Desonia's right coronary artery was 100% blocked and several other significant arteries were approximately 90% blocked. AR 377–78. Mr. Desonia's credibility and daily living activities are irrelevant to this analysis.

Mr. Desonia's heart condition met Listing 4.04. He is therefore conclusively presumed to be disabled and it is unnecessary to resolve any other issues raised in this matter. It is clear from the record that Mr. Desonia is entitled to disability benefits.

## VII. Conclusion.

For the reasons discussed, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. The ALJ's decision is **REVERSED** and this matter is **REMANDED** to the Commissioner of Social Security for an immediate award of benefits.

4. **JUDGMENT** is to be entered in the Plaintiff's favor.

5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 26th day of September 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge